## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN GIAMBRA and** | : | **Civil No. 3:14-CV-1084** |
| **DIANE GIAMBRA,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CHARLES STORCH and** | : | |
| **SHERYL STORCH,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

Now pending before the Court is the defendants' motion to enforce a settlement agreement that the defendants contend the parties reached in full resolution of this litigation.  In support of this motion the defendants insist that the parties had agreed upon the essential and material terms of an agreement in the autumn of 2014, and were merely negotiating the agreement's language after forming a binding oral contract. In contrast, the plaintiffs maintain that the parties never reached a full agreement on the terms of a settlement, but instead had simply exchanged offers that had not yet been accepted by both parties, thereby permitting the plaintiffs to insist upon new or even different terms weeks after the draft settlement document was exchanged.

After this action was transferred to the undersigned, we convened an

evidentiary hearing during which Defendant's counsel and the Defendant Sheryl Storch testified, and where the parties presented argument.[1]  Upon consideration of that evidence and the parties' competing views; and finding that the parties had not, in fact, entered into an enforceable settlement agreement, we are constrained to deny the defendants' motion.

## II.    **<u>BACKGROUND</u>**

This is a local property dispute between former neighbors.  On April 30, 2014, plaintiffs John and Diane Giambra commenced a lawsuit in the Court of Common Pleas of Luzerne County.  (Doc. 1.)  In the complaint, the plaintiffs alleged that the defendants, Charles and Sheryl Storch, tortiously interfered with contract and were otherwise liable for nuisance.  According to the complaint, the plaintiffs own real property at 15 Whispering Way, in Jenkins Township, Pennsylvania.  The property is adjacent to property owned by the defendants located at 360 Westminster Road, Jenkins Township.  A section of the plaintiff's land, which the plaintiffs develop, is located between two parcels of land owned by the defendants.    The plaintiffs endeavored to sell their property to a third-party purchaser, and the plaintiffs allege

---

[1]We did not receive testimony from any plaintiffs' witnesses due to a regrettable oversight; plaintiffs' counsel had not properly calendared this scheduled hearing, and failed to appear at the time, necessitating a delay in these proceedings until counsel could travel to court and appear.

that after they entered into an agreement for that sale, the defendants acted in a manner that was threatening and tortious, and impaired the sale of the property.

This lawsuit followed, with the plaintiffs bringing claims for tortious interference with contract and nuisance under Pennsylvania law. The defendants removed the action to this Court on or about June 4, 2014, pursuant to 28 U.S.C. § 1441, on the grounds that there existed diversity of citizenship under 28 U.S.C. § 1332.[2]

---

[2] The defendants are citizens of Pennsylvania, and therefore were not privileged to remove this case to federal court pursuant to 28 U.S.C. § 1441 because the so-called "forum defendant rule" made removal improper. See 28 U.S.C. § 1441(b). Cases based upon a federal question are, of course, "removable without regard to the citizenship or residence of the parties." Id. All other cases are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Id. The defendants are citizens of Pennsylvania, and thus were not empowered to remove this action from the Court of Common Pleas of Luzerne County. Nevertheless, when the defendants removed this action to federal court the plaintiffs did not timely move to remand.

This issue is not without significance, because it triggered a question about whether this Court has subject matter jurisdiction over this lawsuit after it was improperly removed, regardless of whether the plaintiff declined to move to remand the case to state court. As the parties are aware, a federal court is under an ongoing duty to ensure that it has jurisdiction over an action. See 28 U.S.C. § 1447(c) (directing that a court shall remand a case to state court if it appears at any time that the district court lacks subject-matter jurisdiction).

Federal courts are split on the question of whether improvident removal by a forum defendant is a jurisdictional defect, or simply a violation that does not deprive the court of jurisdiction. See generally Theodore P. "Jack" Metzler, Jr., *A Lively Debate: The Eighth Circuit and the Forum Defendant Rule*, 36 William Mitchell Law Review 1638 (2010). The Third Circuit has interpreted Supreme

On September 10, 2014, the parties attended a settlement conference before the

Honorable Thomas M. Blewitt. With the benefit of hindsight, the reported dynamics

of this conference may have contributed to the compounding confusion which was

later exhibited in this case, since the testimony revealed that the principals were not

all physically present together at the conference. Instead, some of the tentative

understandings that the parties believed that they had reached were communicated to

the principals through third parties by telephone, a process which allowed imprecision

to creep into these discussions.[3] During that conference the parties discussed a number

of terms under which settlement could be reached. One of these terms related to the

outstanding demands for damages, and attorneys fees, made by

---

Court guidance to instruct that if the plaintiff could have brought the action in
federal court, improvident removal by a forum defendant does not otherwise
deprive the court of jurisdiction. Korea Exchange Bank v. Trackwise Sales Corp.,
66 F.3d 46, 50 (3d Cir. 1995) ("We conclude therefore that an irregularity in
removal of a case to federal court is to be considered 'jurisdictional' only if the
case could not initially have been filed in federal court."). In this case, it appears
clear the parties are citizens of different states and that the amount in controversy
exceeded $75,000, thus satisfying the requirements of 28 U.S.C. § 1332. Thus,
"[t]he invocation of the removal machinery by [the Storches], while error, is not a
'jurisdictional' defect . . . . Rather, it is a 'defect in removal procedure' which can
be waived." Id.

   [3]The confusion which can be created by the process of reporting something
through multiple sources is recognized in human behavior and is referred to as the
Rashomon effect, a term derived from the classic Kurosawa film depicting how
differing perspectives regarding a story repeated by different parties can distort
subjective perceptions.

each party. At the close of the conference, it was reported to Mrs. Storch that each party would agree to abandon their pending and current requests for costs, fees or damages as part of a settlement. This understanding was a material condition of any settlement for Mrs. Storch. While Mrs. Storch understood that the mutual abandonment of pending damages and fee claims was part of the tentative agreement, notably missing from the agreement was any discussion regarding how the parties might allocate the cost of potential future expenses for the improvement of the defendants' property, including future utility access payments for the defendants in the event that they attempted to improve and market plots of land that they owned within the larger development maintained by the plaintiffs, and sought to take advantage of existing utility lines which the plaintiffs had installed throughout this larger tract of land. The failure of the parties to anticipate, or address, this question would compound the confusion in this case in the following weeks.

On September 26, 2014, the parties exchanged a draft settlement agreement. Each party, however, may have construed this document in a different way. The defendants represent that the parties had in fact agreed to all material terms orally and were simply memorializing the agreement, whereas the plaintiffs maintain that the parties had not reached a meeting of the minds and that their negotiations were

ongoing.[4]  Three days later, counsel for the Defendants represented that he was in his office and available to discuss the proposal and, in fact, proposed revisions to the draft that had been circulated.  (Doc. 38, Ex. A, Email dated Sept. 29, 2014 from Matthew J. Carmody, Esq. to Joseph J. Mashinski, Esq.)

On October 7, 2014, the defendants again wrote to the plaintiffs, inquiring about the status of the settlement agreement.  (Id., Ex. B, Email dated Oct. 7, 2014 from Matthew J. Carmody, Esq. to S. Falcone, Esq. and Joseph J. Mashinski, Esq.) In that email, counsel asked, "Any updates on the settlement agreement?  If it's not going to be finalized before 11 am tomorrow, I suggest we at least call the judge's chambers this afternoon if we're able to catch him or first thing in morning and ask for additional time.  I don't want to waste his time waiting for a conference call."  (Id.) Counsel for the plaintiffs agreed, noting that "more time is necessary. . . . It is most likely best for us to get together later this week to finish this."  (Id.) This exchange reveals that discussions were still on-going between the parties, but shed little definitive light on what the parties' respective views may have been regarding the terms of their agreement.

---

[4]While we fully credit and accept the defendants' subjective impression in this regard, we note that subsequent communications between the parties reflected the addition and negotiation of further substantive terms, a fact which undermines the reasonableness of this sincere subjective belief, and supports an inference that there had been no complete and mutual meeting of the minds.

On October 8, 2014, Judge Blewitt entered an order rescheduling the parties' telephone conference to October 15, 2014. (Doc. 29.) On October 8, 2014, counsel for the defendants confirmed that the conference had been rescheduled, and concluded by asking opposing counsel to "Let me know if/when you want to meet to finalize the agreement." (Doc. 38, Ex. C.) Thereafter, on October 15, 2014, the Court convened the conference call and entered a note on the docket reflecting that "Settlement negotiations ongoing. Court schedules follow up telephonic status conference for October 21 at 9:30 a.m." (Doc. 30.)

The Court scheduled another telephone conference for October 21, 2014 (Doc. 31), but that conference was thereafter continued to October 29, 2014 (Doc. 32). The reason for the continuance is not clear, but the defendants' counsel sent an email on October 20, 2014, inquiring whether plaintiffs' counsel had "time to address this settlement today?" (Doc, 38, Ex. D.) The telephone conference was again continued to October 31, 2015, and then continued again until November 12, 2014. (Doc. 34.)

It appears that during the latter stages of this process, the plaintiffs presented an issue which had not been squarely addressed in prior negotiations, the allocation of future potential utility hook-up costs in the event that the defendants improved and marketed plots of land that they owned, and sought to take advantage of existing utility lines which the plaintiffs had installed throughout this tract. For their part, the

plaintiffs now insisted upon a $10,000 utility hook-up payment as part of any settlement, if the defendants wished to utilize the existing utility lines installed by the plaintiffs as part of their development of this tract.

The inclusion of a term like the term proposed by the plaintiffs in the settlement agreement is understandable since one element of the settlement was resolution of competing property owner interests in the future between the parties, a resolution that would necessarily have to prescribe rules governing the conduct of the parties in the event that the defendants sought to improve and market one of the lots that they owned within the plaintiffs' development. Yet the timing of the addition of this term to the agreement is unfortunate, and in some respects inexplicable, since there is no prior indication that the parties had specifically addressed this matter at a prior stage of their negotiations.[5]

While the November 12, 2014 telephone conference scheduled in this case

---

[5]The defendants focus on the belated addition of these terms to their agreement as proof that these terms were never part of the mutual understanding by the parties, and the tardy and casual way in which these terms came to be added to the proposed settlement reflect poorly upon the plaintiffs' attention to what should have been important matters in these negotiations. Furthermore, this behavior has caused expense, delay, and inconvenience for all parties, since the plaintiffs could have avoided this issue entirely through a more timely complete and responsive approach to these settlement issues. We are not prepared, however, to conclude that this thoughtless behavior rose to the level of a conscious decision to forego these terms in an agreement, a conscious choice which we could then enforce as a binding contract.

might have shed some light on this issue, curiously, before this conference could take place the defendants filed their motion to enforce what they contended was a binding settlement agreement: an agreement that was exchanged in September, weeks prior to correspondence between the parties discussing further and ongoing negotiations, which was drafted with a "November" execution date, and which was evidently never signed by any party. The defendants nevertheless contended that the parties had reached a binding oral agreement as to all material terms some time in September, and that any further negotiation related to matters that were not fundamental to the core principles agreed upon. The plaintiffs rejected this view entirely, noting that the relationship between the parties – former neighbors – was a complex one, and that the settlement proposals exchanged between the parties reflected this fact, since any resolution would necessarily involve not only money, but improvements to property, easements, and maintenance.

Upon reflection, we find that the overall lack of clarity and precision in this process does not permit us to conclude that the Defendants have carried their burden of proving that an enforceable, albeit oral, settlement agreement existed between these parties. Instead, we find that the evidence equally supports the proposition that there was a fundamental and mutual misunderstanding between the parties regarding the essential elements of their agreement, a mutual misunderstanding which prevents us

from enforcing any agreement in this matter.

## III.   DISCUSSION

A settlement agreement is a form of contract.  See Mortellite v. Novartis Crop Prot., Inc., 460 F.3d 483, 492 (3d Cir. 2006).  Thus, "[a]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing."  Green v. John H. Lewis & Co., 436 F.2d 389, 390 (3d Cir. 1970) (per curiam); see also Wyndmoor Learning Ctr. v. City of Wilmington, 1996 WL 11747, at *7 (E.D. Pa. Mar. 12, 1996) (a "'settlement agreement is still binding even if it is clear that a party had a change of heart between the time he agreed to the terms of the settlement and when those terms were reduced to writing.'") (quoting Pugh v. Super Fresh Food Markets, Inc., 640 F. Supp. 1306, 1308 (E.D. Pa. 1986).  As with all contracts, however, critical to the formation of a settlement agreement's enforcement is that "the minds of the parties should meet upon all terms, as well as the subject matter, of the [agreement]."  Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999).  The essential elements of a contract are an offer, acceptance, and consideration or a mutual meeting of the minds.  Riviello v. First Nat. Cmty. Bank, Civ. A. 3:10-2347, 2013 WL 1348259 (M.D. Pa. Apr. 3, 2013).

Furthermore, as a general rule the party asserting the existence of a settlement

agreement bears the burden of proving the existence of that agreement in terms that are sufficiently definite to be enforceable. See Garba v. Fresh Exp., Inc., No. 1:13-CV-2497, 2014 WL 4976269, at *3 (M.D. Pa. Sept. 30, 2014) (party asserting existence of oral settlement agreement bears the burden of proof on the issue of attorney's authority to enter into the agreement). Therefore, where the evidence does not provide sufficient clarity to carry this burden of proof on the existence and terms of a settlement agreement, we are constrained to deny a motion to enforce any proposed accord.

In this case we find that the evidence does not permit us to find an enforceable agreement. In spite of the defendants' insistence that all material terms of a settlement had been reached and were incorporated into the written settlement agreement that was tendered to plaintiffs' counsel on or around September 26, 2014, there is virtually nothing that would support a finding that the parties had reached a complete meeting on the minds on all material terms.  The email exchanged between counsel reflected that negotiations remained ongoing, and even the defendants' counsel was adding terms that were not included in the document that he had previously sent to the plaintiffs for review. The defendants provided the Court with no compelling evidence to show that all terms insisted upon by each side had been agreed to and incorporated into the parties' agreement, or that there was a final deal reached.

Not only is the ongoing nature of the negotiations reflected in the correspondence of counsel, but the Court scheduled and rescheduled multiple status conferences with the parties to discuss their work towards settlement, noting in mid-October 2014 that "Settlement negotiations ongoing" and scheduled a follow-up meeting with counsel to discuss their progress at achieving resolution of the matter. Thus, rather than confirming the defendants' view of the settlement agreement as something that was actually reached in late September, the evidence strongly indicates that there was no agreement at that point, and that the parties continued to exchange proposals. The draft agreement exchanged in September may well have reflected terms that the parties had discussed and agreed to in principle, but can not be said to represent a full and complete agreement.

What appears to have motivated the defendants to file the motion to enforce the settlement agreement that they had agreed to in large part in September is that the plaintiffs seem to have insisted on new, different, and more onerous terms weeks later in this process. We fully credit Defendant Sheryl Storch's testimony, and the argument of counsel, that the plaintiffs' insistence upon entirely new terms or conditions at the eleventh hour of the parties' negotiations came as a shock, and imposed costs upon the defendants that they had not contemplated earlier and would be especially burdensome. It would indeed be unfortunate if the plaintiffs' belated

insistence upon these terms and conditions would derail the parties' efforts to resolve this dispute, but we are unable to find on the evidence before us that this action reflected a bad faith abandonment of an agreement, since then evidence also supports an inference that this was conduct represented a mutual misunderstanding regarding a term that the parties should have addressed earlier in their negotiations, a misunderstanding that was exacerbated by the plaintiffs' tardy and casual approach to issues that in hindsight deserved greater and more timely attention.

Having reached this conclusion, we strongly believe that the parties should in a more focused and attentive way conduct settlement discussions and the Court stands ready to assist them in facilitating settlement discussions by identifying another appropriate settlement officer to assist in this effort. Therefore, the Court will order the parties within 10 days to notify us if they are prepared to undertake further settlement discussion under the direct guidance of a judicial officer. However, the Court may not enforce the settlement agreement that the defendants have proposed, because there has, been insufficient proof presented to allow us to find that a binding agreement exists in this matter. As with all contracts, "the minds of the parties should meet upon all terms, as well as the subject matter, of the [agreement]." Mazzella v. Koken, 739 A.2d 531, 536 (Pa. 1999). It has not been shown that this mutual understanding happened here, and the Court must therefore deny the defendants'

motion.

## IV.  <u>**ORDER**</u>

Accordingly, for the reasons set forth above, the defendants' motion to enforce settlement agreement (Doc. 35) is DENIED.   The parties are ORDERED within 10 days to notify us if they are prepared to undertake further settlement discussion under the direct guidance of a judicial officer.


<u>/S/ Martin C. Carlson</u>
Martin C. Carlson
United States Magistrate Judge

Dated: June 11, 2015